**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**KEY WEST DIVISION**

AMY STEWART, on Behalf of Herself and All Others Similarly Situated,

Plaintiff,

vs.

STARBUCKS CORPORATION,

Defendant.

**Case No.:**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiff, Amy Stewart ("Plaintiff"), by and through her attorneys, brings this action on behalf of herself and all others similarly situated against Defendant Starbucks Corp. ("Defendant" or "Starbucks"). Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## INTRODUCTION

1. Plaintiff brings this class action on behalf of herself, and all similarly situated consumers who purchased Starbucks' line of "Protein Beverages" marketed

as being “Sugar-Free” (collectively, the “Products”), though they actually contain copious amounts of sugar. The Products are manufactured by Starbucks Corp.

2. Defendant heavily markets and advertises the Products as being “Sugar-Free” in this line of eight beverages whose names all begin with the same phrase. However, unbeknownst to reasonable consumers, the Products contain between thirteen to twenty-one grams of sugar per venti-size[1] serving. The Products in Starbucks' line of “Protein Beverages” that are at issue in this action are the: (1) Iced Sugar-Free Vanilla Protein Latte; (2) Iced Sugar-Free Caramel Protein Latte; (3) Iced Sugar-Free Vanilla Protein Matcha; (4) Iced Sugar-Free Caramel Protein Matcha; (5) Sugar-Free Vanilla Protein Latte; (6) Sugar-Free Caramel Protein Latte; (7) Sugar-Free Vanilla Protein Matcha; and (8) Sugar-Free Caramel Protein Matcha.

3. The Products repeatedly represent that they are “Sugar-Free” as is part of the drink names. The claims continue to be advertised on online ordering sites and mobile applications such as DoorDash, Grubhub, and UberEats (collectively, “Third-Party Applications”), as well as on Starbucks’ own website and application.

4. Accordingly, Plaintiff brings claims against Defendant for violations of: Florida’s Deceptive and Unfair Trade Practices Act, § 501.201, et seq. (“FDUPTA”) and unjust enrichment, and negligent misrepresentation.

---

[1] A Venti serving size is 20 oz. for hot beverages and 24 oz. for cold beverages per Starbucks’ website. https://www.starbucks.com/menu/protein/protein-beverages

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over the case pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2)(A) because the proposed Class includes more than 100 members, the aggregate claims of the proposed Class exceed $5,000,000, exclusive of interest and costs, and at least one member of the proposed Class is a citizen of a state different from Defendant.

6. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant engaged in substantial conduct relevant to Plaintiff's claims within this District and has caused harm to Class members residing within this District.

## PARTIES

7. Plaintiff, Amy Stewart, is a citizen of Florida residing in Marathon, Florida. Plaintiff purchased an iced sugar-free vanilla protein latte for her personal use from Starbucks locations in Marathon, Florida, in the summer of 2026 for approximately $8.00. Before making her purchase, Plaintiff saw and relied on Defendant's prominent representation that the Product(s) were "Sugar-Free." Based on that representation, Plaintiff reasonably believed that the Products contained no sugar. The representation was part of the basis of Plaintiff's bargain, and she would not have purchased the Products on the same terms had she known it was untrue. Plaintiff also paid a price premium because of Defendant's false and misleading "Sugar-Free" claim but did not receive the benefit of her bargain because the

Products contain between thirteen and twenty-one grams of sugar per Venti size serving. Had Plaintiff known the truth, she would not have purchased the Products or would have paid substantially less for them.

8. Plaintiff remains interested in purchasing Starbucks' Sugar-Free Protein Beverages that truly contain no sugar. However, she cannot know for certain whether Defendant's false labeling and marketing have been or will be corrected, and the Products' composition may change over time. If Defendant continues to make the "Sugar-Free" representations, Plaintiff will be unable to make informed purchasing decisions and is likely to be misled again unless Defendant is required to ensure that the Products' marketing is accurate.

9. Defendant, Starbucks Corp. ("Starbucks"), is a Washington corporation with its principal place of business in Seattle, Washington. Defendant formulates, labels, markets, and/or sells Products throughout Florida and the United States, including in this district.

## FACTUAL ALLEGATIONS

### A. High Protein, High Sugar, Low Disclosure

10. With the introduction of its Protein Beverages in September 2025, Starbucks was targeting a more expansive group of consumers. Protein has become the pinnacle macronutrient for Americans, as many now define "healthy foods" as

those that are high in protein.[2] Protein is the main nutrient most Americans are trying to consume, with 70% focusing on it.[3]

11. When the Protein Beverages line was announced, Starbucks indicated to consumers that there would be "sugar-free and unsweetened choices" available within it.[4] Through this announcement, Starbucks shows that it clearly understands the distinction between "sugar-free" and "unsweetened."

12. Under 21 C.F.R. § 101.60(c)(1)(i) a food may not be labeled as "sugar-free" or variations thereof unless "[t]he food contains less than 0.5g of sugars. . . per reference amount customarily consumed and per labeled serving[.]" Whereas "unsweetened" or "no sugar added" means "[t]he sugars content has not been increased above the amount present in the ingredients[.]"[5]

13. Consumer demand for products without sugar is well documented. A 2022 nationwide survey found that 73% of Americans ages 18 to 80 reported trying to limit or avoid sugar.[6]

---

[2] Int'l Food Information Council: *Americans' Perceptions of Protein*, July 2025 at 4 https://ific.org/wp-content/uploads/2025/07/IFIC-Spotlight-Survey-Protein-Perceptions.pdf (Last accessed October 7, 2026).
[3] *Id.* at 8.
[4] *Starbucks Goes All In On Protein: Announces Arrival of New Protein Lattes and Protein Cold Foam to the Menu on Sept. 29*, Sept. 2, 2025 https://about.starbucks.com/press/2025/starbucks-goes-all-in-on-protein-announces-arrival-of-new-protein-lattes-and-protein-cold-foam-to-the-menu/ (Last accessed October 7, 2026).
[5] 21 C.F.R. 101.60(c)(2)(iii).
[6] Int'l Food Information Council, 2022 Food & Health Survey 57 (May 18, 2022), https://ific.org/wp-content/uploads/2022/06/IFIC-2022-Food-and-Health-Survey-Report-May-2022.pdf (Last accessed November 5, 2026).

14. Sugar is known to provide excess calories, causing weight gain and obesity. It may also cause a slew of other health problems, including tooth decay, inflammation, type 2 diabetes, fatty liver, and heart disease, to name a few.[7]

15. Starbucks has capitalized on its false claims of "Sugar-Free" Protein Beverages as it charges a price premium for those beverages.

### B. Defendant's Sugar-Free v. No Added Sugar Claims

16. On or about September 29, 2025, Starbucks launched its Protein Beverage line.

17. Each of the eight beverages has a name that begins with the words "Sugar-Free" as shown below:[8]




[7] Children's Hospital of Philadelphia, *Food as Medicine: Limiting Sugar in the Diet*, https://www.chop.edu/health-resources/food-medicine-limiting-sugar-diet (Last accessed October 29, 2026).
[8] Starbucks Protein Beverages, https://www.starbucks.com/menu/protein/protein-beverages (Last accessed October 29, 2026).

18. Unsuspecting consumers were induced to purchase beverages at a premium, which were touted by Starbucks for being high-protein and sugar-free, not knowing that only one of those claims was accurate.

19. Starbucks makes two different representations regarding the sugar content of the Products when the fine print is consulted. The online Starbucks menu has an item description and nutrition information listed at the bottom of the page, which on first glance is cut off from the consumer's screen unless they scroll down as depicted below:[9]




[9] Starbucks Sugar-Free Vanilla Protein Latte, Venti, https://www.starbucks.com/menu/product/28501/hot?gad_source=1&gad_campaignid=23056098370&gbraid=0AAAAADoJV5sBqkgTK6qdDUW5WJyfN1m1A&gclid=EAIaIQobChMIhrrPmv3rlwMV4BJECB0AqSTpEAAYASAAEgJcxvD_BwE (Last accessed November 3, 2026).




20. The website requires that consumers scroll down in order to see any nutritional information, though the "Add to Order" button is readily available to them, along with the advertisements of the Product being Sugar-Free and high-protein. Consumers are induced to rely on the Product descriptions without looking at nutritional information and order quickly by making it necessary for them to scroll down further to access any nutritional information.




20. In the above-depicted description of Starbucks' Sugar-Free Vanilla Protein Latte, the fine print says, "No Added Sugar," while the name indicates that there is no sugar in the Product. These phrases are distinguishable, as one indicates the Product is totally free of sugar, while the other indicates that no additional sugar—apart from any that may already have occurred naturally—has been added to the Product.

21. Defendant acknowledges in its description of this Product that it does, in fact, contain sugar when it states that the Product has "…less sugar than our Vanilla Protein Latte."[10]

22. The pages for each of the Products are materially similar to the example shown above, with sugar contents for the Products from thirteen to twenty-one grams depending on the variety.

---

[10] https://www.starbucks.com/menu/product/28501/hot?gad_source=1&gad_campaignid=23056098370&gbraid=0AAAAADoJV5uz6t2tVs31i4f2S_rhV7Z1a&gclid=EAIaIQobChMI2aHOyLColwMVKSfUAR0N_yQQEAAYASAAEgIr8vD_BwE (Last accessed on October 7, 2026).

23. Despite this acknowledgment in the fine print of each Product at issue, Starbucks still labeled the Products as being sugar-free in each of the Product names. A reasonable consumer could easily be misled into thinking that "Sugar-Free Vanilla Protein Latte" contains no sugar.

24. Even if Starbucks properly named the beverages as having "No Added Sugar" as opposed to "Sugar-Free", these drinks still contain a significant amount of lactose—sugar that naturally occurs from milk.

25. According to the ingredients list for each of the Products, each contains milk.[11]

26. Federal law requires ingredients to be listed "in descending order of predominance by weight."[12]

27. In six out of the eight Sugar-Free Products, milk is the first ingredient listed: the Sugar-Free Vanilla Protein Latte; the Sugar-Free Caramel Protein Latte; the Sugar-Free Vanilla Protein Matcha; the Sugar-Free Caramel Protein Matcha; the Iced Sugar-Free Vanilla Protein Matcha; and the Iced Sugar-Free Caramel Protein

---

[11] *See* Iced Sugar-Free Vanilla Protein Latte, https://www.starbucks.com/menu/product/28500/iced; Iced Sugar-Free Caramel Protein Latte, https://www.starbucks.com/menu/product/34818/iced; Iced Sugar-Free Vanilla Protein Matcha, https://www.starbucks.com/menu/product/28504/iced; Iced Sugar-Free Caramel Protein Matcha, https://www.starbucks.com/menu/product/34816/iced; Sugar-Free Vanilla Protein Latte, https://www.starbucks.com/menu/product/28501/hot; Sugar-Free Caramel Protein Latte, https://www.starbucks.com/menu/product/34819/hot; Sugar-Free Vanilla Protein Matcha, https://www.starbucks.com/menu/product/28505/hot; Sugar-Free Caramel Protein Matcha, https://www.starbucks.com/menu/product/34817/hot (Last accessed November 4, 2026).

[12] 21 C.F.R. § 101.4(a)(1).

Matcha. This indicates that milk is the most prevalent ingredient by weight in these drinks.

28. In the remaining two Sugar-Free Products, milk is second, only to ice on the ingredients list: the Iced Sugar-Free Vanilla Protein Latte and the Iced Sugar-Free Caramel Protein Latte. This indicates that milk is the second most prevalent ingredient by weight in these drinks.

29. The milk in each of the Sugar-Free Products contains lactose.

30. Lactose is a sugar.

31. Starbucks is aware that the Sugar-Free Products contain milk; that the milk contains lactose; and that lactose is a sugar. This is evidenced by Starbucks' admission in the nutrition information that the Products contain approximately thirteen to twenty-one grams of sugar per venti serving.

32. Despite having the above knowledge, Starbucks nonetheless calls these beverages "Sugar-Free." It knows that consumers will rely on this language when deciding which products to purchase and will reach a broader market with the health benefits it purports to have.

**C. Starbucks Violates FDA Regulations Re Use of the Term "Sugar-Free"**

33. The FDA regulation governing the term "sugar free" illustrates that consumer expectations with this claim are related to both sugar and calorie content: "Consumers may reasonably be expected to regard terms that represent that the food

contains no sugars or sweeteners e.g., 'sugar free,' or 'no sugar,' as indicating a product which is low in calories or significantly reduced in calories."[13] The FDA has thus determined that consumers interpret "sugar free" as a statement that makes representations regarding sugar content as well as reduced calories.

34. The FDA has classified lactose as a "sugar" since at least 1993.[14] Lactose does not simply fall under the regulatory definition of "total sugars;" the regulation explicitly names it as one of four examples if such sugars: "Total sugars shall be defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)."[15]

35. Under FDA regulations, a food or beverage (including the Sugar-Free Products) may be labeled "sugar free," "free of sugar," "no sugar," "zero sugar," or a comparable synonym only if (among other things) it "contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving[.]"[16]

36. In September 2007, the FDA reiterated these requirements in a letter to food manufacturers and distributors, identifying accurate claims regarding the absence of sugar as a regulatory priority and advising that it intended to take

---

[13] 21 C.F.R. § 101.60(c)(1)
[14] *See* 21 C.F.R. § 101.9(c)(6)(ii); 58 Fed. Reg. 2079, 2177 (Jan. 6, 1993).
[15] 21 C.F.R. § 101.9(c)(6)(ii).
[16] 21 C.F.R. § 101.60(c)(1)(i)).

appropriate action against products bearing "sugar free" claims that failed to satisfy each requirement of 21 C.F.R. § 101.60(c).[17]

37. Each of the Sugar-Free Products contains greater than 0.5 grams of sugar per reference amount customarily consumed and per labeled serving and Starbucks is well aware of this fact as evidenced by the nutrition information it provides, showing that the Products contain between thirteen to twenty-one grams of sugar per venti serving.

38. Despite knowing that the Sugar-Free Products contain greater than 0.5 grams of sugar per reference amount customarily consumed and per labeled serving, Starbucks nonetheless calls these drinks Sugar-Free.

### D. Starbucks Violates the Mandatory Calorie Disclaimer that the FDA Requires When a "Sugar-Free" Claim is Made

39. Even if the "Sugar-Free" Products had less than 0.5 grams of sugar per RACC, Starbucks could not legally call them "sugar-free" as Starbucks currently presents them. Section 101.60(c)(1)(iii) permits the term "sugar free" to be used only if the food (A) "is labeled 'low calorie' or 'reduced calorie' or bears a relative claim of special dietary usefulness," or (B) the term "is immediately accompanied, each time it is used, by either the statement 'not a reduced calorie food,' 'not a low calorie food,' or 'not for weight control.'"

[17] U.S. Food & Drug Admin., *Guidance for Industry and FDA: Dear Manufacturer Letter Regarding Sugar Free Claims* (Sept. 2007), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-and-fda-dear-manufacturer-letter-regarding-sugar-free-claims (Last accessed November 4, 2026).

40. The FDA specifically emphasized this requirement in its September 2007 letter to food manufacturers and distributors, expressing concern about products bearing "sugar free" claims without the required calorie disclaimer as "[w]ithout such information some consumers might think the food was offered for weight control." The letter goes on to remind the industry that the disclaimer, when required, must accompany the claim each time it is used.[18]

41. The "Sugar-Free" Products are not labeled as being "low calorie" or "reduced calorie" nor are they low calorie. They range from 270 to 340 calories per venti size serving.[19]

42. Upon information and belief, Starbucks does not accompany the term "Sugar-Free" with the statement "not a reduced calorie food," "not a low calorie food," or "not for weight control," anywhere, including on its physical menus, mobile application, website, or in Third-Party Applications.

43. By failing to use any of the qualifying language referenced above when using the term "Sugar-Free" in connection with the Products, Defendant violates 21 C.F.R. § 101.60(c)(1)(iii).

---

[18] U.S. Food & Drug Admin., *Guidance for Industry and FDA: Dear Manufacturer Letter Regarding Sugar Free Claims* (Sept. 2007), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-and-fda-dear-manufacturer-letter-regarding-sugar-free-claims (Last accessed November 4, 2026).

[19] Starbucks Sugar-Free Vanilla Protein Latte, https://www.starbucks.com/menu/product/28501/hot (Last visited October 29, 2026) (Showing that the Sugar-Free Vanilla Protein Latte is 270 calories per Venti size). Starbucks Iced Sugar-Free Vanilla Protein Matcha, https://www.starbucks.com/menu/product/28504/iced (Last accessed October 29, 2026) (Showing that the Iced Sugar-Free Vanilla Protein Matcha is 340 calories per Venti size).

44. The FDA instituted this specific calorie disclaimer requirement because consumers understand the term "sugar-free" to indicate that a product is "low in calories or significantly reduced in calories."[20] By using the term without the required disclaimer, Starbucks made representations to consumers that the Products are Sugar-Free as well as implied that they are low or reduced in calories—both of which are false.

45. Florida's food labeling laws are required to be in conformity with the Federal Food, Drug, and Cosmetic Act, including federal regulations in Title 21 of the Code of Federal Regulations, as required by Fla. Stat. § 500.02 and implemented through the rulemaking authority under Fla. Stat. § 500.09(3). Florida Administrative Code Rule 5K-4.002(1)(d) explicitly incorporates and adopts Title 21, Part 101, C.F.R. (Food Labeling) as part of Florida's rules under Chapter 500, F.S. ("Florida Food Act").

**E. FDA "Sugar-Free" & Calorie Labeling Requirements Apply to Food Served in Starbucks Restaurants**

46. Claims regarding the sugar content of a food are only permissible if, among other things, "[t]he claim is made in accordance with the general requirements for nutrient content claims in § 101.13."[21]

---

[20] 21 C.F.R. § 101.60(c)(1).
[21] 21 C.F.R. § 101.60(a)(2).

47. Section 101.13 expressly applies to food served in restaurants: "A nutrient content claim used on food that is served in restaurants or other establishments in which food is served for immediate human consumption or which is sold for sale or use in such establishments shall comply with the requirements of this section and the appropriate definition in subpart D of this part[.]"[22] Section 101.60 is in subpart D.

48. The exceptions to this rule are narrow and inapplicable here. No exception excuses a restaurant from the substantive definition of "sugar free" in § 101.60(c)(1).

49. The requirements of 21 C.F.R. § 101.60(c)(1), therefore, apply in full to Starbucks's naming, displaying, marketing, and selling of the Sugar-Free Products.

**F. Plaintiffs' Claims Impose Requirements Identical to Federal Requirements & Are Not Preempted**

50. Federal law prohibits states from implementing "any requirement respecting any claim of the type described in section 343(r)(1) of this title made in the label or labeling of food that is not identical to the requirement of section 343(r)

[22] 21 C.F.R. § 101.13(q)(5).

of this title."[23] It does not prohibit states from imposing requirements that are identical.

51. Plaintiff seeks to hold Starbucks liable because falsely telling consumers that beverages that contain significant quantities of sugar per serving are actually "Sugar-Free" and failing to include required calorie disclaimers violates state laws against unfair trade practices, false advertising, and other wrongful conduct.

52. As described above, such conduct also violates FDA labeling requirements already in force.

53. Plaintiff does not seek to require Starbucks to add any statement to the Sugar-Free Products' labels that federal law does not already require, or to remove any statement that federal law requires. Plaintiffs request only what 21 C.F.R. § 101.60(c)(1) already commands: that beverages containing thirteen to twenty-one grams of sugar per serving not be called "Sugar-Free" and that accurate "Sugar-Free" claims be accompanied by required calorie disclaimers.

54. Defendant formulates the Products and controls the ingredient statement, Nutrition Facts panel, and packaging. Defendant lists allulose as the third or fourth ingredient and prints the Zero Sugar Representations prominently on both

[23] 21 U.S.C. § 343-1(a)(5).

the front panels. Those facts demonstrate that Defendant knew the Products contained added allulose while making the challenged representations.

55. Defendant could have stopped using the Zero Sugar Representations, accurately qualified them, or ensured that they were true, but chose not to.

**G. Defendant's Zero Sugar Representations Injured Plaintiff and the Class.**

56. The sugar content of a beverage, particularly one marketed toward those looking after their health, as many high protein products are, is material information to reasonable consumers. Starbucks is well aware of this fact.[24]

57. Starbucks' decision to incorporate "Sugar-Free" into the names of the Products was calculated to attract consumers seeking to reduce or avoid sugar. Starbucks prominently used that designation in its product launch announcement, identifying the "Sugar Free Vanilla Protein Matcha" and "Sugar-Free Vanilla Protein Latte" as distinct offerings alongside its other protein beverages.[25] By making the name of the Products include the words "Sugar Free," Starbucks used that specific characteristic to induce consumers to select those beverages over competing options. Starbucks intended this false designation to influence purchasing decisions concerning the very nutritional attribute it purported to describe.

---

[24] *Supra* note 4.
[25] Starbucks New Protein Lattes and Cold Foam Drinks Now Available (Sept. 29, 2025) https://about.starbucks.com/stories/2025/starbucks-new-protein-lattes-and-cold-foam-drinks-now-available/ (Last accessed November 5, 2026).

58. Starbucks knows that nutritional characteristics of its products and dietary preferences of consumers shape its customers' purchasing decisions. Starbucks offers a multitude of ways for consumers to customize their beverages, including reducing sweetness or adding protein.[26] Thus, Starbucks intends to reach a broad market by offering beverages to fit a wide array of dietary preferences and needs. In particular, the "Sugar-Free" products are designed to reach consumers that would like to keep their sugar intake low.

59. The International Food Information Council—a nonprofit organization funded by the food and beverage industry—reported in its 2025 Food & Health Survey that 63 percent of Americans are concerned about the amount of sugar in their diet and that 75 percent of Americans are trying to reduce or eliminate it.[27]

60. Consumers paid a premium price for the Products as a venti size Sugar-Free Protein Beverage costs between $6.95-$7.25.[28] Other beverages that are low or no sugar are available to consumers at lower cost, such as: the Nurri Mocha Caffeinated Protein shake with one gram of sugar for $2.89;[29] the Joyburst Protein

---

[26] Kate Schenk, *Empowering Customers to Personalize Their Starbucks Experience* (March 12, 2026) https://about.starbucks.com/press/2026/empowering-customers-to-personalize-their-starbucks-experience/ (Last accessed November 5, 2026).

[27] 2025 IFIC Food & Health Survey at 66-7, https://ific.org/wp-content/uploads/2025-IFIC-Food-Health-Survey-Full-Report.pdf (Last accessed November 5, 2026).

[28] https://starbucksmenuprice.us/starbucks-protein-beverages-menu/ (Last accessed November 5, 2026).

[29] https://www.target.com/p/nurri-ultra-filtered-mocha-milk-shake-11-fl-oz/-/A-94935134#lnk=sametab (Last accessed November 5, 2026).

Coffee Dark Roast with no sugar for $2.99;[30] or the Slate Milk Vanilla Latte High Protein Iced Coffee with one gram of sugar for $3.49.[31]

61. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and Class Members in that they: (a) paid money for products that were not as represented; (b) paid a premium for the Products; (c) were deprived of the benefit of their bargains; and (d) purchased misbranded Products that could not lawfully have been sold because they violate FDA requirements and, for Florida Class Members, Florida Statutes.

62. Accordingly, Plaintiff and Class Members suffered injury in fact and lost money or property because of Defendant's wrongful conduct.

63. Despite Defendant's misrepresentations, Plaintiff and Class members would purchase the Products, as advertised, if they in fact were Sugar-Free. Absent an injunction prohibiting Defendant's deceptive marketing and advertising practices, Plaintiff and Class members will be unable to rely with confidence on Defendant's representations about the Products in the future. This constitutes an ongoing injury that can and would be remedied by an injunction enjoining Defendant from making the misleading representations alleged herein. In the absence of such injunctive

---

[30] https://www.target.com/p/joyburst-protein-coffee-dark-roast-12-fl-oz-single/-/A-95206305#lnk=sametab (Last accessed November 5, 2026).

[31] https://www.target.com/p/slate-vanilla-latte-high-protein-iced-coffee-11-fl-oz-can/-/A-90036476#lnk=sametab (Last accessed November 5, 2026).

relief, Defendant will continue to mislead consumers, who will reasonably but incorrectly believe that the Products are Sugar-Free.

64. All of Defendant's misrepresentations and omissions at issue here were consistently made during the applicable class period. Defendant made uniform misrepresentations about the Products that Plaintiff and all class members were exposed to and relied upon.

65. Plaintiff expressly does not seek to contest or enforce any state law that has requirements beyond those required by Federal laws or regulations.

## CLASS ACTION ALLEGATIONS

66. **Class Definition:** Plaintiff brings this class action on behalf of herself, and as a class action on behalf of the following putative class (the "Class"):

> **Florida Class**: All individual residents of the State of Florida who purchased the Product(s) through the date of class certification. Excluded from the Class are: (1) Defendant and all directors, officers, employees, partners, principals, shareholders, and agents of Defendant; (2) Any currently sitting United States District Court Judge or Justice, and the current spouse and all other persons within the third-degree of consanguinity to such judge/justice; and (3) Class Counsel.

67. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

68. **Numerosity and Ascertainability:** Plaintiff does not know the exact number of members of the putative classes. Based on Plaintiff's initial investigation, however, Plaintiff is informed and believes that the total number of Class members is at least in the tens of thousands, and that members of the Class are numerous and geographically dispersed throughout the United States and Florida. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, including Defendant's records, either manually or through computerized searches.

69. **Typicality and Adequacy:** Plaintiff's claims are typical of those of the proposed Class because Plaintiff was exposed to Defendant's "Sugar-Free" Representations, purchased a Product in reliance on them, and suffered the same type of economic loss. Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests that are antagonistic to those of the proposed Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

70. **Existence and Predominance of Common Questions of Law and Fact:** Common questions of law and fact exist as to all Class Members and

predominate over questions affecting only individual members. These common legal and factual questions include, but are not limited to:

(a) Whether Starbucks falsely labels the Products as "Sugar-Free";

(b) Whether the Products fail the governing conditions for the Sugar-Free representations including 21 U.S.C. § 343(r)(1)(A); 21 C.F.R. §§ 101.9(c)(1), (c)(2)(iii), (c)(6)(ii), 101.13(q)(5), and 101.60(a)(1)–(3), (c)(2);

(c) Whether reasonable consumers would understand Defendant's representations concerning the Products to be untrue or misleading;

(d) Whether Defendant's representations were material;

(e) Whether the Products are misbranded under federal law and, with respect to the Florida Class, Florida law;

(f) Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

(g) Whether Plaintiff and Class Members suffered damages as a result of Defendant's actions and the amount of those damages;

(h) Whether Plaintiff and Class Members are entitled to attorneys' fees and costs.

71. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of the asserted claims under Federal Rule of Civil Procedure 23(b)(3) because the expense and burden of individual litigation

make it economically infeasible for Class Members to seek redress outside a class action. Even if Class Members could afford individual litigation, the burden on the courts would be substantial. Individualized litigation would risk varying or contradictory judgments and magnify delay and expense through repeated trials of the same factual issues. By contrast, maintaining this action as a class action with respect to some or all issues presents fewer management difficulties, conserves party and judicial resources, and protects each Class Member's rights. Plaintiff anticipates no difficulty managing this action as a class action. Class wide relief is essential to compel compliance with applicable consumer protection laws, and separate actions could subject Defendant to inconsistent obligations.

## CAUSES OF ACTION

## COUNT I

### For Violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. 501.201 et seq. (Florida Class)

72. Plaintiff realleges and incorporates by reference Paragraphs 1 through 65 as if fully set forth herein.

73. Plaintiff brings this claim on her own behalf and on behalf of the Florida Class against Defendant.

74. Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition,

unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of their business.

75. The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that Defendant's Products are "Sugar-Free."

76. There is no justifiable purpose in representing that the Products made with approximately thirteen to twenty-one grams of sugar per venti serving are Sugar-Free.

77. Plaintiff and Class members relied upon these representations in deciding to purchase the Product(s). Plaintiff's reliance was reasonable because of Defendant's reputation as a reliable company. Plaintiff and Florida Class Members could not reasonably have avoided their injury or known that the prominent labeling was inaccurate. Consumers are not required to reconcile the name of the Product being "Sugar-Free" with opposing nutritional information available only online.

78. Had Plaintiff known that the Products were not as advertised, she would not have purchased them. As a result of Defendant's deceptive and unfair acts, Plaintiff and Class members have been damaged.

79. Defendant's conduct offends established public policy and is immoral, unethical, oppressive, and unscrupulous to consumers.

80. Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

81. Defendant should also be ordered to cease its deceptive advertising and should be made to engage in a corrective advertising campaign to inform consumers that its Product contains added sugar.

**COUNT II**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Florida Class)**

82. Plaintiff realleges and incorporates by reference Paragraphs 1 through 65 as if fully set forth herein.

83. Plaintiff brings this claim individually and on behalf of the Florida Class against Defendant.

84. To the extent required, Plaintiff asserts this cause of action in the alternative to her legal claims, as permitted by Federal Rule of Civil Procedure 8.

85. Defendant's false and misleading "Sugar-Free" representations caused Plaintiff and Class Members to pay a price premium for the Products.

86. Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the Class Members is unjust and inequitable; Defendant has been unjustly enriched in an amount to be determined at trial.

87. Defendant thereby received a direct and unjust benefit at the expense of Plaintiff and Class Members.

88. Plaintiff and Class Members seek the return of that unjust benefit.

**COUNT III**
**Negligent Misrepresentation**
**(On Behalf of Plaintiff and the Florida Class)**

89. Plaintiff realleges and incorporates by reference paragraphs 1 through 65 above as if fully set forth herein.

90. Defendant has negligently represented that the Products are "Sugar-Free", when in fact the Products contain thirteen to twenty-one grams of sugar per venti serving.

91. Defendant has misrepresented a material fact to the public, including Plaintiff and Class members, about the Products.

92. The Products are marketed directly to consumers by Defendant, are made to order at Defendant's establishments and sold to customers.

93. Defendant knows the Products' misstatements are material to the reasonable consumer and Defendant intends for consumers to rely upon the misstatements when choosing the Products.

94. Defendant has omitted the fact that the Products contain thirteen to twenty-one grams of sugar per venti serving despite claiming they are "Sugar-Free."

95. Defendant knew or should have known that these misstatements or omissions would materially affect Plaintiff's and Class members' decisions to purchase the Products.

96. Plaintiff and other reasonable consumers, including the Class members, reasonably relied on Defendant's representations set forth herein, and, in reliance thereon, purchased the Products.

97. The reliance by Plaintiff and Class members was reasonable and justified in that Defendant appeared to be, and represented itself to be, a reputable business, and it distributed the Products through reputable companies.

98. Plaintiff and Class members would not have been willing to pay for Defendant's Products if they knew that the Products were not Sugar-Free.

99. As a direct and proximate result of Defendant's misrepresentations, Plaintiff and members of the Class were induced to purchase Defendant's Products, and have suffered damages to be determined at trial, in that, among other things, they have been deprived of the benefit of their bargain in that they bought Products that were not what they were represented to be, and they have spent money on Products that had less value than was reflected in the premium purchase price they paid for the Products.

100. Plaintiff seeks all available remedies, damages, and awards as a result of Defendant's negligent misrepresentations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

a. Certify this action as a class action;

b. Award compensatory, statutory, and punitive damages as to all Counts where such relief is permitted by law;

c. Enjoin Defendant's conduct and order Defendant to engage in a corrective advertising and labeling/disclosure campaign;

d. Award equitable monetary relief, including restitution;

e. Award pre-judgment and post-judgment interest at the legal rate;

f. Award Plaintiff and Class members the costs of this action, including reasonable attorneys' fees, costs, and expenses; and

g. Award such other and further legal and equitable relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable.

DATED: November 13, 2026

*s/William Wright*
**WILLIAM WRIGHT**
The Wright Law Office, P.A.
FL Bar No. 138861
**NISHA WRIGHT**
FL Bar No. 11012
515 N. Flagler Drive, Suite 350
West Palm Beach, FL 33401
Telephone: (561) 514-0904
willwright@wrightlawoffice.com
nisha@wrightlawoffice.com